FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 21, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID R.,<br><br>      Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | No. 2:19-cv-00156-SMJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT** |

  Before the Court, without oral argument, are the parties' cross-motions for summary judgment, ECF Nos. 13, 14. Plaintiff David R. appeals the Administrative Law Judge's (ALJ) denial of his application for Supplemental Security Income (SSI) benefits. Plaintiff alleges the ALJ (1) improperly discounted Plaintiff's symptom testimony and (2) improperly discounted or dismissed medical opinions. ECF No. 13. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision. ECF No. 14.

  Upon reviewing the administrative record, the parties' briefs, and the relevant authority, the Court is fully informed. For the reasons set forth below, the Court finds the ALJ did nor err in assigning limited weight to the testimony of Plaintiff or

in weighing the opinions of three medical professionals regarding Plaintiff's limitations. Accordingly, the Court denies Plaintiff's motion for summary judgment and grants the Commissioner's motion for summary judgment.

## BACKGROUND[1]

Plaintiff first applied for SSI in 2012, the Commissioner denied Plaintiff's application, and this Court granted the Commissioner's motion for summary judgment. AR 93–134.[2] Plaintiff again applied for SSI benefits on October 21, 2016. AR 258–63. The Commissioner denied Plaintiff's application on January 27, 2017, *see* AR 170–73, and denied it again on reconsideration, *see* AR 150–67. At Plaintiff's request, a hearing was held before ALJ Lori L. Freund. AR 37–92. The ALJ denied Plaintiff benefits on June 1, 2018. AR 12–36. The Appeals Council denied Plaintiff's request for review on March 30, 2019. AR 1–6. Plaintiff then appealed to this Court under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1.

## DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

---

[1] The facts, thoroughly stated in the record and the parties' briefs, are only briefly summarized here.

[2] References to the administrative record (AR), ECF No. 8, are to the provided page numbers to avoid confusion.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 2

last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity, or RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant

is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show (1) the claimant can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## ALJ FINDINGS

At step one, the ALJ found Plaintiff had not engaged in substantial gainful

activity since the application date. AR 18.

At step two, the ALJ found that Plaintiff had five medically determinable severe impairments: a history of alcohol abuse disorder, unspecified depressive disorder, unspecified anxiety disorder, unspecified personality disorder, and chronic episodes of gout. AR 18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR 22.

At step four, the ALJ found that Plaintiff had an RFC sufficient to perform medium work as defined in 20 C.F.R. §§ 404.967(c) with the following limitations: "[Plaintiff] can lift/carry up to fifty pounds occasionally and twenty-five pounds frequently, sit at least 6 hours in an 8-hour workday, and stand/walk 2 hours at one time for a total of at least 6 hours in an 8-hour workday with normal breaks. [Plaintiff] is limited to frequent operation of foot controls bilaterally; occasional climbing of ladders, ropes and scaffolds; occasional kneeling, crouching and crawling; frequent climbing of ramps and stairs with the use of a handrails; avoid even moderate exposure to unprotected heights; can understand, remember and carry out both simple repetitive tasks/instructions as well as detailed and complex tasks/instructions; no production rate or fast-paced work; no work requiring a lot of individual decision-making or judgment; no more than occasional changes in work

setting; no interaction with the public; and can have superficial to occasional interaction with coworkers and supervisors, but no tandem tasks could be performed." AR 23.

In reaching this determination, the ALJ gave great weight to the opinions of Dr. Kingsley Ugorji, M.D., and J.D. Fitterer, M.D. AR 28. The ALJ gave some weight to the opinions of Stephen Rubin, Ph.D., Dan Donahue, Ph.D., and Kristine Harrison, Psy.D., and gave little weight to the opinions of Kayleen Islam-Zwart, Ph.D., and John F. Arnold, Ph.D. *Id.* at 28–29.

At step five, the ALJ found Plaintiff had no past relevant work but that Plaintiff could perform other jobs existing in the national economy including janitor, floor waxer, and merchandise marker. *Id.* at 30–31.

## STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record, considered as a whole, to support the ALJ's decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler,* 761 F.2d 530, 531 (9th Cir. 1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla but may be less than a preponderance. *Id.*

at 1110–11 (citation omitted). If the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court will not reverse an ALJ's decision if the errors committed by the ALJ were harmless. *Molina*, 674 F.3d at 1111 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## ANALYSIS

**A.    The ALJ did not err in discounting Plaintiff's subjective symptom testimony**

Plaintiff first assigns error to the ALJ's decision to discount Plaintiff's own subjective symptom testimony. ECF No. 13 at 12–14. The Commissioner contends the ALJ properly discounted Plaintiff's symptom testimony because it was inconsistent with other evidence in the record. ECF No. 14 at 3–7.

Where a claimant presents objective medical evidence of impairments that could reasonably produce the symptoms complained of, an ALJ may reject the claimant's testimony about the severity of his symptoms only for "specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). The ALJ's findings must be sufficient "to permit the court to conclude that the ALJ

did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In evaluating the claimant's credibility, the "ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Bray*, 554 F.3d at 1227. The Court may not second guess the ALJ's credibility findings that are supported by substantial evidence. *Tommasetti*, 533 F.3d at 1039.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but rejected Plaintiff's symptom testimony concerning the intensity, persistence, and limiting effects as not entirely consistent with the medical evidence and other evidence in the record. AR 25. Regarding Plaintiff's gout, the ALJ determined that the "totality of the record does not fully support a finding that this condition is disabling and prohibits claimant from performing all work." *Id.* The ALJ conducted a review of the medical records, noting that the only regular treatment Plaintiff received for gout is Naproxen, that he has declined a gout prophylaxis medication, and that he has reported that Naproxen works well in controlling his symptoms. *Id.* The ALJ also discussed physical examination findings and medical opinions, including the opinion of Plaintiff's treating physician Dr. Kingsley Ugorji, M.D., that Plaintiff is capable of performing medium work. *Id.*

Regarding Plaintiff's mental impairments, the ALJ found the objective medical evidence did not support the level of limitation Plaintiff claimed and that Plaintiff's statements concerning the intensity, persistence, and limiting effects were inconsistent with the record when viewed as a whole. *Id.* at 25–26. The ALJ observed Plaintiff had only received routine, conservative treatment for his mental health issues, and discussed his mental health history from 2016 through January 2018. *Id.* at 25. The ALJ noted that Plaintiff stopped receiving services at Frontier Behavioral Health in April 2016, stopped taking Prozac several months prior to October 2016, informed his physician that he did not want any psychotropic medication in October 2016, and in December 2016 stated he did not want to engage in therapy. AR 26. The record not only supports these conclusions, but also indicates that Plaintiff denied use of medication for his mental health and indicated he did not require mental health medication. AR 438.

The ALJ further found that Plaintiff's treatment records from April 2017 forward show that Plaintiff "made good progress in improving his anxiety, depression, and insomnia symptoms, and that his mental status examinations were largely within normal limits." AR 26. The records supports these findings. *See* AR 594 (reflecting Plaintiff's discharge from mental health treatment on basis that he "no longer meets medical necessity"). The ALJ also noted that while Plaintiff again received mental health services in April 2017, his stated reason for seeking

treatment was not that he felt he needed treatment, but because he was seeking SSI for anxiety, depression, and medical reasons. AR 26. The ALJ also stated Plaintiff ceased mental health treatment "because" counseling was no longer a requirement to receive state benefits. *Id.* The record is unclear whether Plaintiff sought to end treatment or merely did not object when his counselor suggested discharging him. AR 594. The ALJ did note, however, that Plaintiff has not sought mental health treatment since January 2018 and takes no psychotropic medications. AR 26. The ALJ specifically relied on the findings of Dr. Rubin, who found Plaintiff's mental impairments non-severe and opined they would not impose any significant work-related limitations. *Id.*

The ALJ also discussed inconsistencies between Plaintiff's testimony and his medical records. First, the ALJ's findings regarding Plaintiff's anxiety-induced vomiting are not entirely supported by the record. AR 26. Plaintiff testified he has episodes of anxiety-induced vomiting every few months, but the ALJ found that there were no records of Plaintiff seeking treatment for this and that Plaintiff specifically denied nausea and vomiting in December 2015, March 2016, and March 2017. AR 26. Contrary to the ALJ's statement, there are records of Plaintiff reporting vomiting to a mental health provider in September and October 2017. AR 597–98. The Court, therefore, rejects this finding. Similarly unsupported was the ALJ's finding that Plaintiff's level of daily activity was inconsistent with a

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 10

person who had been bedridden for a week and a half. AR 26; AR 303. The ALJ did not make clear why Plaintiff's statement that he had once been bedridden for a specified time period is inconsistent with daily activities that took place outside of this time period. The Court, therefore, also rejects this finding.

However, the ALJ made other findings, which do find support in the record, regarding inconsistencies between Plaintiff's testimony and his statements to medical providers. For example, Plaintiff testified at the hearing that the main problem areas for his gout were his two large toes and his elbows. AR 67–68. However, the ALJ found there were no medical records of Plaintiff complaining of pain from gout in his toes or feet. AR 26. The ALJ also noted that while Plaintiff was receiving mental health treatment, he reported increased productivity, which was inconsistent with his testimony regarding his severe lack of motivation, and that Plaintiff's insomnia and nightmares decreased with medication. *Id.* The ALJ also found that Plaintiff claimed cognitive issues regarding memory, concentration, and task completion that were inconsistent with mental status examinations showing intact memory, attention, and concentration, and were also inconsistent with Plaintiff's activities, including his ability to read non-fiction books and manage his money. *Id.* The ALJ also listed inconsistent statements Plaintiff made throughout the record and during testimony about his past drug and alcohol use. *Id.*

Contrary to Plaintiff's arguments, the ALJ did not rely on these findings of inconsistency for an impermissible purpose beyond determining Plaintiff's credibility. *Compare Tommasetti*, 533 F.3d at 1039 ("The ALJ may consider many factors in weighing a claimant's credibility, including . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . ." (internal quotation omitted)), *with Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (finding ALJ improperly discounted claimant's testimony where ALJ found the daily activities themselves indicated claimant was more functional than alleged, but those daily activities did not contradict testimony or reflect any transferrable work skills).

Regarding Plaintiff's mental health, the ALJ did not improperly cherry-pick inconsistent reports of positive mental health symptoms outside the context of treatment, remission, or overall improvement. *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) (finding ALJ erred by "improperly singl[ing] out a few episodes of temporary well-being from a sustained period of impairment"). Nor did the ALJ in this case "chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). Rather, the ALJ evaluated Plaintiff's longitudinal mental health

treatment, noting that Plaintiff affirmatively declined needing mental health medication and treatment and finding that Plaintiff improved when he attended counseling. Overall, these findings are sufficient "to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

**B.  The ALJ did not err in discounting the opinions of Dr. Arnold, Ph.D., Dr. Islam-Zwart, Ph.D., and Dr. Rubin, Ph.D.**

Plaintiff next argues the ALJ erred by giving little weight to the opinions of examining providers Kayleen Islam-Zwart, Ph.D., and John F. Arnold, Ph.D., and "rejecting most of the opinions of the medical advisor Stephen Rubin, Ph.D." ECF No. 13 at 15. The Commissioner argues the ALJ reasonably weighed these medical opinions. ECF No. 14 at 7.

For SSI appeal purposes, there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 13

that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.*

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only for "clear and convincing reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d 821, 830–31).

### 1. The ALJ did not err in weighing Dr. Rubin's opinions

Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting portions of Dr. Rubin's testimony. ECF No. 13 at 15. The ALJ gave some weight to Dr. Rubin's opinions, finding Dr. Rubin's overall conclusion that Plaintiff's mental impairment does not prohibit him from performing basic work activities was "well supported by the record as a whole, the largely benign mental status findings . . . , and [Plaintiff's] demonstrated functional abilities." AR 28. The ALJ, however, discounted Dr. Rubin's opinions because he found that Dr. Rubin's testimony was "internally inconsistent in that he found no severe mental impairments yet found two of the 'paragraph B' criteria to be within the moderate level." *Id.* This finding is supported by the record, and that Dr. Rubin's opinions were internally inconsistent was a specific and legitimate reason to discount his

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 14

opinion. *Houghton v. Comm'r, S.S.A.*, 493 F. App'x 843, 845 (9th Cir. 2012) (holding ALJ's finding that physicians' opinions were "internally inconsistent" constituted specific and legitimate basis for discounting them).

Plaintiff argues that the ALJ "rejected" most of Dr. Rubin's opinions. ECF No. 13 at 15. Plaintiff does not specify what opinions the ALJ allegedly rejected. *Id.* In summarizing Dr. Rubin's testimony, Plaintiff's focus appears to be on Dr. Rubin's statement that Plaintiff would have some level of absenteeism at work, though Dr. Rubin indicated he did not know how many days per month Plaintiff would be absent. *Id.* at 8–9; AR 55. When the ALJ questioned Dr. Rubin regarding Plaintiff's likely absenteeism, Dr. Rubin further indicated that he would like "to see him stock part-time, and work several days a week through the hours of four hours a day, until he build[s] up some stamina," noting that Plaintiff would likely not "succeed very well at all at this point." AR 55–56. Dr. Rubin explained that "stamina" referred to mental stamina and that "the idea of going to work" would be difficult for Plaintiff. *Id.* 56.

However, nothing in these statements would militate in favor of finding an "inability to engage in any substantial gainful activity . . . which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Dr. Rubin did not at any point state that Plaintiff would indefinitely suffer from

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 15

absenteeism. *See* AR 51–59. Dr. Rubin's testimony that Plaintiff would not cope well with immediately beginning full time work, but would instead likely need to begin at the part time level, fails to specify a likely timeframe for this transition. *See id.* Thus, the ALJ's decision is not in conflict with Dr. Rubin's testimony and the Court will not substitute an alternative interpretation of this testimony. *See Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). Overall, the Court does not find error with the ALJ's weighing of Dr. Rubin's opinions.

  **2. The ALJ did not err in discounting Dr. Islam-Zwart's and Dr. Arnold's opinions**

  The ALJ gave little weight to the opinions of Dr. Islam-Zwart, who examined Plaintiff in February 2016 and December 2016, and Dr. Arnold, who examined Plaintiff in March 2014 and March 2017. AR 29. Plaintiff argues the ALJ failed to give specific and legitimate reasons for discounting these medical opinions. ECF No. 13 at 15. The Commissioner argues the ALJ did not err in rejecting these opinions. ECF No. 14 at 9–12.

  The ALJ provided multiple grounds for discounting each of these opinions. Regarding Dr. Islam-Zwart's February 2016 opinion, the ALJ found Dr. Islam-Zwart provided no explanation or objective findings in support of her conclusion

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 16

that Plaintiff was unable to work, that her mental status examination was largely within normal limits, that the only "marked" limitation Dr. Islam-Zwart noted was unsupported outside of Plaintiff's self-reports, and that this examination occurred prior to the alleged onset date. AR 29. Regarding Dr. Islam-Zwart's December 2016 opinion, the ALJ noted Dr. Islam-Zwart's own stated uncertainty regarding the degree to which Plaintiff's "current concerns are a function of his alcohol use," that Dr. Islam-Zwart again provided no explanation or objective findings in support of her conclusion that Plaintiff was unable to work, that her own opinion was internally inconsistent, that the opinions were inconsistent with treatment records, and that the opinions were inconsistent with other opinions in the record. *Id.*

Regarding Dr. Arnold's opinions, the ALJ noted both opinions were largely check-box forms with no explanation, that the marked mental limitations were inconsistent with his own mental status findings and his own report that "vocational training or services would minimize or eliminate barriers to employment" and were also inconsistent with treatment records and Plaintiff's reports of improvement with therapy and medication. *Id.* The ALJ further noted that Plaintiff misrepresented his alcohol use to Dr. Arnold, and so Dr. Arnold did not have a complete picture regarding Plaintiff's mental health. *Id.* Finally, the ALJ noted Dr. Arnold's opinions were inconsistent with other mental health opinions. *Id.*

In discounting each of these opinions, the ALJ provided multiple specific and

legitimate reasons. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) ("factors relevant to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole"); *Houghton*, 493 F. App'x at 845 (holding ALJ's finding that physicians' opinions were "internally inconsistent" constituted specific and legitimate basis for discounting them); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("ALJs are permitted to reject 'check-off reports that [do] not contain any explanation of the bases of their conclusions.'" (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (alteration in orginal)); *Carmickle v. Comm'r, S.S.A.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). Further, these grounds are supported by the record. *See* AR 431–38, 451, 464, 472–76, 477–85, 486–92, 594.

As to discounting Dr. Islam-Zwart's opinion on the grounds that it was based on Plaintiff's self-reports, an ALJ may discount an opinion if it is "based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti*, 533 F.3d at 1041 (9th Cir. 2008)). However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 18

1049 (9th Cir. 2017). Psychiatric evaluations "will always depend in part on the patient's self-report" because "unlike a broken arm, a mind cannot be x-rayed." *Id.* at 1049 (internal quotation marks omitted) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). In this case, however, the ALJ first made extensive findings and articulated specific, clear and convincing reasons for finding Plaintiff's testimony was not credible. AR 25–28. As such, the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting the opinions of Dr. Islam-Zwart and Dr. Arnold. Overall, the ALJ did not reversibly err.

## CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. The Clerk's Office shall **ENTER JUDGMENT** in favor of **DEFENDANT** and thereafter **CLOSE** the file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 21st day of April 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge